May it please the Court, Justices, Counsel, and Guests. My name is Robin Dunn, and I represent the appellant, T. J. Boam. This case involves a novel question of whether mere nudity and hygienic activity constitutes sexually explicit conduct under 18 U.S.C. 2251 sub a. Based upon research, the Ninth Circuit has addressed this novel question via Perkins under 2256 under photography, but not under 2251. We are not asking this Court to change or overrule any prior cases. We are asking this Court to clarify this question. Based upon research from other circuits, mere nudity, including daily activities, does not constitute sexually explicit conduct. In the Fifth Circuit in Steen in 2011, in the 2021 case of Hilley in the D.C. Circuit, in the December 15, 2022 case just recently announced, in the Eighth Circuit in McCoy, and the 1999 case in Amaralt, they all indicated that daily hygienic activities does not constitute sexually explicit behavior. You mentioned the Fifth Circuit case, U.S. v. Steen, did you right now? I think you may have. You cited in your briefs, in support of your argument that the government failed to, you know, present evidence to meet this whole sexually explicit conduct element. In response, the government has cited to a different Fifth Circuit case, United States v. McCall. What is your best argument that this case is more like Steen than it is like the McCall case? Factually, the camera in this particular case was placed in a master bedroom six months prior to any filming of the minor youth. It was placed there for purposes of the medicine cabinet where theft was occurring. Inside the home, they had a... Well, the spouse of your client denies that. That's correct. And so the jury, seems like in light of its verdict, did not believe your client's version. So the way you frame that right now, I just, because we have to look at this in light of our case law, and I think that brings into the picture the DOS factors, correct? In the DOS factors, you will also note that the context of...was a major factor in DOS, and they indicated that even a girl laying on a bed with her genitalia exposed did not necessarily constitute sexually explicit conduct. It was the context in which the photographs were taken or the videos, and in this case, there is no question that it occurred six months before. The packaged material that was for the daycare and for the bathroom, the two cameras, came in the same package. Both parents were aware that this material arrived six months before T.A. ever showered in the master bedroom. Well, but the jury had information that was presented during the trial evidence that the defendant here, the appellant here, directed the T.S. or T.A., the victim here, the alleged to shower in, and he set up the camera, apparently, whether or not it was with the wife's knowledge. He set up the camera, and then there was some 404B evidence that went to...all going to his intent, and when they found the videos, it didn't show everybody going into the bathroom as he purported to substantiate why he had put that in there. It was a curated videography of just the alleged victim here. So aren't those all different bases in which the jury could have concluded that the DOS factors supported that this was sexually explicit conduct? No, and the reason being is the factual assertions that I'll get to, but we spent the majority of the time under 404B with factors that should not have been allowed by the judge as the gatekeeper of 404B. The trial did not focus on 2251. It focused on 404B issues, which I will get to in more detail. Well, so are you telling me that your argument here on the sexually explicit conduct rises and falls with the 404B? No. I am telling you that you have had the opportunity to view 1000 exhibit through 1035, and you do not see any sexually explicit conduct on those videos. You see a girl taking a shower, getting out, drying off. Her genitalia are not exposed. It is not directed at her as in the other cases. Counsel, hold on. I mean, I think you might be going just a step too far from reality there. I want to back up for a second and ask a question. I think if we looked at this whole scenario from the girl's perspective. She was not engaging in sexual conduct. She was showering, and she had no idea that anybody was watching her. So if we only looked at it from her perspective, sure, this is not sexually explicit conduct. But the DOST factors and our decision in Wigand says that we also look at the voyeur's perspective, the person who's observing, and we look at if this is a sexually lascivious conduct from their perspective. And here the evidence is overwhelming that it was for him. And so how is this not meeting the definition given the law that we have to apply in this circuit? I would disagree that it was for him. The telephone or cell phone that was used was subject to the entire family using that for Game of Thrones. They all had access to that telephone. If he was trying to use it for him, the entire family could have seen these videos that were downloaded from the cloud. But even if that's true, that doesn't undermine the fact that he could be viewing this for lascivious reasons. There is no evidence in the record that he even viewed one photograph. Well, counsel, these are all questions of fact, which, I mean, our duty isn't to find those findings of fact over. We're at layer and layer of standards of review here, so we have to view the light and most favorable to the government and find that there is, you know, no way a reasonable jury could find, based on circumstantial evidence, that your client viewed them, that these, even under Wegan, that the videos and photos or videos are, as a matter of fact, lascivious. These are all jury findings that we can't disturb unless we find that there's no way a reasonable juror could have concluded that the standard was met. Well, let me cite you to three excerpts of Record 168, where the star witness for the government, Special Agent Knight, had to admit that the videos and pictures were strictly hygienic in nature. Yes, but why doesn't Wegan control that? Wegan says they don't need to show what, as in the context of adult behavior, sexually explicit conduct, because in the context of minors, right, lascivious doesn't have a, I'm quoting here, does not have such a connotation. In the context of the statute applied to the conduct of children, lascivious is not a characteristic of the child photographed, right, and they say it doesn't have to be unnatural, it doesn't have to be sexually explicit, right, they, in fact, rejected the argument that just because the child was, a 10-year-old child was not depicting neither sexual willingness nor sexual activity, right, and they said that could still meet the statutory definition of lasciviousness, and that was a question of fact for the jury. No, that was for the gatekeeper, the judge, who should not have allowed this to go to the jury, simply because of the factual situation that there was not lascivious activities performed in the 16 videos that you have had the chance to observe. Let me make sure I understand your argument here. Are you saying that, I'm trying to figure out exactly what your issue is with the 404B evidence, that it didn't meet the 404B standard or it was 403, it was too prejudicial, more than probative. I'm trying to understand your argument. Okay, you're jumping to 404B from the sexually explicit materials, right, and you're saying that, which I will address now. Well, I'm only doing that because you said the judge should never allow that in, and so I'm trying to connect your arguments here. Are they not related? No, they are not related because of the fact situation. This camera was placed there six months before she ever showered for her hygienic needs for allergies and the like. She was working on the farm from June through September. She showered 16 times in the master bedroom. Well, the master bedroom, that camera was placed there six months earlier with no intent to film anyone but theft from the medicine cabinet because of the daycare that was located in the house. You say with no intent, but we have to look at this in the light most favorable to the government. That is correct. Okay, so I'm not sure we could say it's with no intent. Correct? Well, the intent, you would have to show that somehow the appellant observed these photographs and he never did these videos. This was one year prior that they were discovered by Melinda, the wife, who actually had the password and cell phone to all of the telephones. She ordered the new telephone. She downloaded everything from the cloud. He did not have anything to do with the downloads or anything else. Now under 404B, the four-part test for admissibility that this court has developed, you would have to have sufficient evidence to allow the information that we contested hotly throughout the trial into evidence. But the district court cited other evidence in the record. These were if the only videos found in the cloud of anyone in the bathroom were of the alleged victim and that other circumstantial evidence formed a reasonable basis for the jury to conclude that there was intent, that there was viewing. So why can you deal with the evidence that the district court cited in support of rejecting the motion for acquittal? Now what was downloaded from the cloud onto the new phone, the iPhone XR, did not contain anything but these videos which you have observed. The impossibility of that was presented through our expert that if you erase the cloud, you have to erase the cloud completely. You cannot selectively erase the cloud. And so when these were downloaded to the XR and Melinda had the password, she controlled the entire phone and that which was on it. Now what is probably most disturbing in this case, there were three forensic interviews of TA, and they were exactly three months apart for three different ones. And she denied any overt activity by the appellant on the first two forensic interviews. And on the third forensic interview, she came out and said there were allegations of touching and or rape. Well, she testified that she was on top of the appellant in the master bedroom. That's not rape. And so the facts that they allowed into the jury completely disproved and completely tainted the entire trial. We did not get to present our rebuttal evidence of the polygraphs that my client passed on two different occasions. We did not get to present expert testimony that the forensic interviews were tainted. We did not get to present evidence of the divorce case, which was totally about custody. There were so many things that we did not have a fair playing field to rebut the evidence that the government presented. So in this case, my client has basically been sentenced to a lifetime sentence. He's over 40 years old, obtained a 45-year sentence. It's a life sentence for hygienic activity of a girl that he did not view. Thank you. Thank you very much. May it please the Court, my name is Justin Paskett. I am an assistant United States attorney representing the government in this matter. I'll begin first with the important distinction that in the Ninth Circuit, the review of whether or not an image or video constitutes child pornography pursuant to the statute charged in this case is still controlled by the DOS factors. And more than that, the Wiegand case is also controlling. In this matter, the government presented evidence that I would note the complete record was more inclusive and of a broader nature than the appellant would refer, strictly sticking to the defendant's testimony. Counsel, can I just jump to sort of right what I'm concerned about? So let's assume that we conclude that there was enough for the jury to find that the defendant had intent, lascivious intent here. Yes, Your Honor. What I'm struggling with is given the nature of this charge, is that enough? So the DOS factors list several things to think about. Our case law says that it's not an exclusive list. It's not a conclusive list. There are guidelines to govern our thinking to figure out if this is lascivious. One of those things in the list is the viewer and their perception. And for purposes of my question, let's start with is that enough? If that's the only factor in the list, and I know that you're going to argue that there are other factors, but for the moment, if that's the only factor met in the list, that the person has clearly established lascivious intent looking at something that otherwise in any other context wouldn't inherently be sexual, is that enough? Your Honor, I would argue that it is. And particularly when viewed in the light most when there is, in fact, a display of the genitals. And that hasn't been disputed. The facts presented approximately 16 separate events of a total of 37 videos. Some of those events split into multiple videos of T.A., the victim in this matter, getting in and out of the shower, being in the shower, and at times her exposed genitals being very visible. The location of whether or not those images contained an exhibition of the genitals. Turning to your question specifically of whether or not the intent of the producer is enough, it's the government's position that it is. Certainly, you're correct. I intend to argue and make the case that there were more factors than that to consider. But in this case, given the totality of what was seen here, there was a lascivious characteristic of the exhibition that was choreographed by the defendant in this case. And that choreography was presented, the government presented evidence of that through the defendant's purchase of the surreptitious camera, through the defendant's placement of the surreptitious camera, where he placed it, what location he placed it in. So, I mean, it seems like this is different than the case where, I mean, there are cases where a person is posing the child, is costuming the child, is, you know, that kind of thing. And there you have definitely a curating, so to speak, or I can't remember the word you just used. Here, yes, he bought the camera and he installed it. So he created the opportunity, but he's not influencing what she's doing at all. So the rub for me is the statute says that we're looking for sexually explicit conduct that is depicted in images. He's engaging in sexually explicit conduct, I think, in some way by being a voyeur, but she isn't, and it's just her that's in the image. So what do we do with that? Well, Your Honor, I think it's a fair question, and the government will concede that this is not a case where there is, in fact, a sexual act by the child. However, in looking at his intent, and whether or not his intent was one of a lascivious nature, I think the totality of the evidence in looking at what he did to present a situation where he would be able to see an exhibition of the victim's genitals is important, and there was... In other cases, they specifically refer to the, you know, zooming in. There was no zooming in here. Does that matter? No, it does not matter, Your Honor. There's no requirement under the statute. I recognize that we're referring to case law, but there's no necessity under the statute that it be zoomed in. I would note that there does appear to be an editing by way of editing out any other videos. There was testimony in this case by Homeland Security Special Agent Brad Rodell that this camera, in reviewing the purchased camera or a like model, could record in two fashions, either remotely through the use of the application on the phone or potentially by way of motion activation. In any event, there were no recovered videos of anyone else on this, meaning that the defendant's actions were to selectively cut out any other potential videos that were recorded and curate this collection of lascivious, of a lascivious exhibition of the victim's genitals. Well, let me ask you about the 404B evidence, because, I mean, the six DOS factor focuses on the intent. It looks like the 404B came in to support evidence of the intent, and it took a central role at the trial. It came up at the very beginning in your opening statement, or I don't know if that was you or your...  opening statement, and then TA provided, you know, relatively detailed testimony. So, I guess I have a couple questions for you. Given this, should we find this evidence may have been overly prejudicial? And second, I guess, I'd like to know if we concluded that the 404B evidence shouldn't have been permitted, or if it wasn't permitted, do you think there still would have been enough? Your Honor, I'll answer that question first. As the government's position, there certainly still would have been enough. To get to the question of whether or not it was overly prejudicial, this is pretty well-trod ground. In terms of the four-part test that the Ninth Circuit has to look at whether or not 404B evidence should be admitted, the district court meticulously went through that test in terms of whether or not it proves a material element, whether or not it was, if it's provided to prove intent sufficiently similar, whether it was sufficient evidence of the 404B event, and finally, that it was not too remote in time. After the court concluded that, it then went to the 403 balancing test, and in that 403 balancing test, the district court found that it's prejudicial. There's no question that other sexual bad acts are going to be prejudicial in any case. The question is, does the probative value outweigh the prejudice? The district court found that it certainly does, as it speaks to the same access the defendant had to the victim in this case, as a family member living in the same house, as it speaks to singling out that victim, and as it speaks to his sexual interest in that victim. And so tell me, you think, what are the other DOS factors that you think are implicated here that were supportive of? Your Honor, the first factor, the focal point of the genitals as part of the defendant's actions, in this case, the defendant surreptitiously placed the camera in a location where, as this court has had the opportunity to review the videos, the camera is in close proximity in a small bathroom. The height that it's located at the victim's genitals at many times are the center of the image. And the victim testified that the defendant instructed her at times to use the master bathroom. So there was specific intent on the part of the defendant in placing the victim in that bathroom where that surreptitious camera was hidden. The second factor, whether or not the setting is sexually suggestive, several courts, sister circuits, have held that a rational juror could conclude that a bathroom is sexually suggestive, specifically noting that showers and bathtubs are frequently hosts to sexual fantasies on television and in films. So why is it, I guess the other question I have is Perkins, U.S. v. Perkins. Can you tell me why that case is distinguishable? Sorry, what was the first case you said? Perkins, U.S. v. Perkins. Just Perkins. Your Honor, the court in Perkins looked at a different issue in that case. While I understand they reviewed the question of a lascivious exhibition, the issue in that case was, one, not whether or not a reasonable jury could conclude that an image was a lascivious exhibition, as is here, but rather that case dealt with whether or not the information provided by an investigating agent in a search warrant was sufficient. In addition to that, the picture or image in question in that case was a single photograph of a prepubescent female taking what appeared to be a selfie with the only thing visible being her naked body in a selfie-type pose photographed to the length of the thighs approximately. So factually, we're looking at a difference between videos that were produced that at versus that case. I think it's factually distinguishable, and the legal issue that the court was examining at that time is also distinct and different than the question of whether or not a motion for acquittal was properly ruled on. Actually, in that case, wasn't the image also, it was like shadowed or something? It was in some way obstructed. Your Honor, my understanding of the facts of that case, that is correct. It was less visible and difficult to see in that case. Your Honor, if I may continue with the DOS factors that I believe do apply in this case, the district court did find the third factor did apply in as far as the question of unnatural pose or inappropriate attire. The district court found that it was unnatural for a 15-year-old to be filmed in the shower, and I think while this is probably a little bit of a novel response to that factor, it's unnatural in the sense that it wouldn't be unnatural for a parent to take a picture of a toddler in a bubble bath playing with toys. It absolutely would be unnatural for anyone to film or photograph a teenage child showering when they believe they have complete privacy. The next factor is factor number four. A reasonable juror could undoubtedly conclude that the victim was nude, and that is a question of whether or not they're nude. The sixth factor, and the government will concede the fifth factor does not apply in this case, but the sixth factor, as we've talked about at length already, the intent of the producer, certainly in this case, a rational juror, which is the standard viewed in light most favorable to the government, could conclude that the videos were intended to elicit a sexual response in the viewer, and again, I would make the argument even without the 404B evidence, but certainly the 404B evidence in this case further illustrates both in the time that it happened, the 404B evidence occurring after the event of the recordings, but also in the sexual intent of the defendant, but in addition to that, the orchestration of what the defendant did in order to curate this collection of 37 videos, 16 different events of solely the victim in this case. If there are no further questions, I would ask that the court affirm the conviction and the sentence. Thank you. Your Honors, the State tries to say that the appellant orchestrated everything. I find that impossible to believe. When the camera was placed there six months prior to any filming, it was placed there for checking a medicine cabinet. Also, there was in the 404B, there was never any allegations that were ever proven. Normally, you would have some prior bad act that had been proven in another court that distinguished or that was factually related to the events in question. This was subsequent to any filming. There was never any charge. There was never any proof. There was never any of the events that normally occur with prior bad acts. We were not allowed to rebut that with polygraph evidence. We were not allowed to rebut that with expert who had viewed the three forensic interviews that they were not conducted properly. We were not allowed to contest T.A.'s vulnerability on her truthfulness. We were not allowed to bring up any of the divorce proceedings. We did not get a fair playing field in this case. That's simply our position. And when the government's own witness says this was strictly hygienic and not lascivious exhibition of the genitals, we believe their expert, Special Agent Knight, when he says that to us, we believe that he to the jury. The jury was prejudiced and biased from the beginning of this case on the 404B evidence. 403 should have allowed the judge to keep that out. From the very opening statement, they alleged rape and other indicia that our client was an evil person and that's just not the case. Thank you. Thank you very much. Thank you for your oral argument. Presentations, the case of United States of America v. Tell, James Boehm, is now submitted.
judges: MURGUIA, FORREST, SUNG